Howard DuBosar is here for the appellate and Mr. Rosengard is with him as well and Carl Williams is here for David Fogel and Mr. DuBosar you may proceed with your argument. Thank you, your honor. Good morning to everybody and may it please the court. My name is Howard DuBosar. I'm with my colleague, Richard Rosengarten. I do represent the appellant, Cathleen Gold-Fogel. I'm not sure what the significance was, but when I turned on the news this morning, the second story to come on was about the receding waters of the Colorado River, and here we are knee deep in it this morning. But in any event, being mindful of what Judge Wilson said, I know that you've read the briefs, you're familiar with the arguments. I'm going to do about a minute of background and get right down to the issues. Counsel, I'm sorry to hit you right off the bat, but I have a question about our jurisdiction. Because you are seeking jurisdiction, or you've invoked jurisdiction, well you haven't, but jurisdiction was invoked under 1332, and because Forrester's is really a disinterested party in this case, it seems like there would have to be complete, or there'd have to be diversity between your client and David, and it may be that that's the case. I see that David has said that he's in Michigan, and I know your client's in Florida, but there were no findings entered by the court, and that was just, I guess, stated in the course of a response. So I just want to make sure that we have jurisdiction here, and I wanted to ask you to address that if you could. Sure, and recognizing that's not an issue that was briefed, but to answer your Honor's question, it is true that the allegations of these that we're dealing with show that we do have diversity between the appellant and the appellee, the appellant being a Florida resident, and having been alleged that David was in Michigan at the time. So there would be diversity, and that would explain, I believe, why jurisdiction was appropriate in the first instance, and wouldn't have changed since. Didn't the allegations say that both were in Florida, and then David wrote back and said, no, I'm in Michigan? And I guess I'm wondering if there had to have been any kind of finding with respect to that, or whether that's just sufficient. I think because the state, and I appreciate the correction that it was David who said he was in Michigan. When the record reflects the diversity and the issue is not challenged, I don't think that it can be challenged for the first time. Well, I realize jurisdiction can always be questioned for the first time on a field, but in this case, there's nothing in the record that would contradict the existence of diversity based on the position that David took in the pleadings. All right, thank you. Thank you. So very quickly, a little bit of background as to how we got here. As you know from the briefs, the appellant in this case, and her late former husband entered into a marital settlement agreement. Under the terms of that marital settlement agreement, Kathleen was named as the beneficiary of a life insurance policy on her former spouse's life. The proceeds of which were to be used both for Kathleen and for her children, even into their adulthood, which is why this isn't even an issue when David is an adult. Notwithstanding the fact that Kathleen was named as the beneficiary of the policy, David, through his lawyer, made a conflicting demand, as alleged in the interpleader complaint, and that led the insurer, International Order of Foresters, to file the interpleader action. Now, as the interpleader action advanced and several months after jurisdiction was obtained over all the parties to the interpleader action, David filed a separate case in state court on various common law theories, including a statutory theory based on trust. But that was filed months after the court had complete jurisdiction over the parties in the interpleader. And then on the eve of trial in the interpleader, David filed a motion to stay under Colorado River or, in the alternative, under Emeritus. And the trial court did in fact enter that stay, notwithstanding that we were approaching trial. In that same order, by the way, the district court required the proceeds of the life insurance policy to be interplayed, and they were deposited into the district court registry. And now we're under the custody of the federal government. In contrast, in the state court case, we moved to dismiss the original complaint, which was based on a trust theory that was dismissed in its entirety. And then an amended complaint was filed, and we moved to dismiss that coincidentally on the very same day that the motion forced the stay was requested. Now, against that background, there are potentially three issues before the court. But the threshold issue is whether the district court abused its discretion in staying the case under Colorado River, where the cases do not involve substantially the same issues. That's important. I'm sorry. I don't speak for anyone else on the panel. We haven't discussed the case. But for me, and I'll certainly give Mr. Williams an opportunity to address it later, I agree with you on Colorado River. I don't think that that applies here. My concern is Emeritus. I don't see why the district court did not act within its discretion under Emeritus when it decided to decline basically just diversity. I'm sorry, the declaratory judgment jurisdiction here. So if we turn our attention to Emeritus, the first issue in Emeritus is really the same as Colorado River. It's the threshold question of whether we're dealing with parallel proceedings. So under either circumstance, a stay would be inappropriate because you don't satisfy, in this case, the threshold standard. And bearing in mind that the public policy is to ensure that cases are litigated when jurisdiction is taken. I'm sorry, where do you get that the threshold question is whether there are parallel proceedings? And also, where do you get your definition of what qualifies as parallel proceedings? Well, the definition of parallel proceedings generally, and this is really in the Colorado River cases. It would come from the Acosta versus Gustino case, which I believe Judge Wilson was on that panel. And it comes from the Ambrosia Cole case as well. But I'm talking about an Emeritus. Where do you get the parallel proceedings as the first step for an Emeritus analysis, which deals with declaratory judgment authority in particular? If you look at the Emeritus case. It talks about in deciding whether to abstain, you consider these various elements. And that includes whether one issue is going to resolve the other. So maybe they don't use the term parallel proceedings in Emeritus. But there needs to be a close nexus between the under factual underlying factual issues in both cases. And that is part of the Emeritus analysis. Right. I'm sorry. Why won't why won't the state proceedings here resolve any issue that's before the federal court, which is just this interpleader action? And I guess the cross claim, but really. Substantively. That is really. I appreciate that question because that really gets me to the point. In the federal interpleader case, there's only one issue before the court right now. Who is the beneficiary under the life insurance policy? And we have asserted that's Kathleen. And when we filed a declaratory judgment counterclaim, if you look at the addendum clause of that, it really asks for the same thing that's asked for in response to the interpleader. I want to stop you there because, see, I think you mischaracterize. I've got the complaint in interpleader filed by Forrester's. OK, and normally that would be true. A life insurance company would come in and say, OK, here it is. Who's the beneficiary? OK, but that's not the complaint Forrester's file. If you look at the complaint Forrester's file, it's all about the MSA. Page two, they argue the policy and the marital settlement agreement. Typically, Kathleen would benefit, but we've got a divorce here. The divorce revokes her interest. The MSA controls. And so we really don't know how to interpret the MSA. We don't know what to do. Forrester's complaint is all about what is the effect of the MSA on our policy, on the law? It's not just this regular deck action. Oh, I got a policy. Who's the beneficiary? That's the complaint Forrester's. So they tee up for the federal court. What is the effect of the MSA? Why is that not correct? Because the MSA on its face says that Kathleen would be the beneficiary. So that's part of the pleading for all purposes. Here's what they say in the complaint and interpreter. They say the beneficiary shall be the wife. And should any funds be received, the same shall be used for the benefit of the wife and the children. So that's Forrester's. Forrester's saying because of that language in the MSA, that clouds the issue. You may be right at the end of the day. You may prevail. OK. But the question is, are we dealing with, in both cases, the effect of the MSA? You may be right. MSA is not going to affect it. But Forrester's has come in and said the MSA makes this all unclear. Florida law is involved. We don't know. So why is that not accurate? I think you actually hit the nail on the head with that allegation. That allegation, as you read it, is pursuant to the MSA. Kathleen gets the proceeds for the benefit of she and the children. That's what it says in the MSA. That's the allegation of the complaint. Now, if we look at what Forrester's asked is to interplead the funds and let these parties duke it out over who gets the funds. But the MSA, as they've alleged it, says Kathleen is the beneficiary. Now we go to state court. And that was the point I wanted to make before. The pleadings in state court don't say David is suing to claim that he's the beneficiary of the policy, which, by the way, the only reason we have this interpleader is because he made a conflicting demand to the entirety of the policy. What he has is three counts. One is breach of fiduciary duty. And this is in the appendix at 146. What David claims is he's suing for his, quote, rightful share of the monthly child support to be funded through the proceeds. So, Kathleen, I see that I'm out of my time. If I may answer the question. I took a lot of your time. So, Judge Wilson, can we give him some time back? Of course. Thank you. You can finish your answer, Judge Wilson. Thank you very much, Judge Wilson. And your argument. I want to hear it. All right. Well, the second count of the state court case is a claim for unjust enrichment. And there he says he wants his rightful share of the monthly child support payment. So, we have the allegation, as you pointed out, Judge Holden, the complaint that the MSA says Kathleen's the beneficiary and is supposed to use these proceeds. And then we have David suing in state court, in his own words, suing for his rightful share. So, at the end of the day, the state court case is not going to decide who the beneficiary is of the interplaid funds. It will only determine, after Kathleen gets the proceeds as the beneficiary, what percentage, if any, David is going to be entitled to. And that's why we almost put the cart before the horse. Because he can't actually complete the state court case and decide what portion, if any, of the proceeds are David's. Until such time. He's got a count three in the state court case. Constructive trust. He wants to impose a constructive trust on the policy proceeds. So, if we look at count three. He wants a constructive trust on those proceeds because, by virtue of the interplay between the MSA, the policy, and everything. Well, what he says in paragraph 69 of that complaint is equity demands that the child support and life insurance proceeds transferred to Kathleen. That were intended to benefit David be remitted to David. So, again, we're back to what is his portion? What was intended to benefit David, who is one of a few children? So, Kathleen, under the MSA, is vested with the responsibility of dealing with those proceeds for the benefit of herself and her children. David is suing in state court on a totally different theory. And that is the theory that he should be getting his rightful share. Which really undercuts the propriety of him having made that conflicting demand leading to the interplay to begin with. So, under either scenario, we don't have substantially the same issues. And the state court case resolution will not determine how the case in federal court is resolved. And we're going to have to come back to federal court, which goes against the piecemeal prong. Because then the district court will have to reopen the case. Make a determination as to who the beneficiary is and distribute those proceeds. So, with that, I will save the remainder of my time for rebuttal. Thank you. All right. Thank you, Mr. Begoza. We'll hear from Mr. Williams. Good morning, Your Honor. May it please the court, Carl Williams on behalf of the appellee, David Fogel. I apologize. As an initial matter, Your Honor, the foresters have subsequently deposited funds in the court registry. So, the case at bar only involves David and Kathleen Fogel. With regard to the state court action, the counterclaim filed by appellant in the federal court action was filed in December, approximately three months after the state court action and request declaratory relief. The two cases, Your Honor, are parallel to the extent that they both attempt to resolve issues associated with the MSA. And both attempt to resolve issues with regard to entitlement to the insurance proceeds within that context. I would argue that the lower court was correct in staying the case based on the similarities between the two cases. They applied the logic in Colorado River and the factors in Emeritus, which are essentially guideposts and are not to be applied mechanically. You know, I think there's a problem with the Colorado River analysis. I'm not sure. First of all, it's supposed to be applied very sparingly. And I'm not sure that the analysis here really supports it. In fact, I'm not even sure any of the factors heavily weigh in its favor. Maybe, you know, I don't know if you want to address that, but I wanted to just bring that to your attention in case you wanted to. I agree with Your Honor. That was my interpretation as well, that it is more the exception than the rule. It is my interpretation under Emeritus and Colorado River that the court has broad discretion in one, under the Declaratory Relief Act, whether or not to even hear the case. But I'm sorry, but under Colorado River, which does not apply just to, I mean, it's not based on a rationale of the declaratory judgment statute. I mean, we have an unflagging obligation to exercise our, a virtually unflagging obligation to exercise our jurisdiction. And so I'm just, I'm not seeing it here under Colorado River. If you want to argue that it's justifiable under Colorado River, you know, feel free to do so. I'm telling you, though, I'm not seeing it. You might be able to change my mind. I just don't see it right now. I understand, Your Honor. I would respectfully submit that the Colorado River case does allow for, you know, the analysis and submission of an order staying the lower court case. I do believe it has to be taken in context with Emeritus. But it was my interpretation, my takeaway from my review of both cases, that the court had discretion to review the factors, weight them as they deemed appropriately, and analyze the lower court action, analyze the action more from a perspective of the totality of the circumstances as opposed to strict mechanical and rigid processes. So that was my interpretation, Your Honor. So I guess I think under Emeritus, it's because of the declaratory judgment statute, which says that the court may exercise, it may go ahead and enter a declaratory judgment under appropriate circumstances, etc. And that that analysis is different because the source of that authority comes from a different place than the Colorado River doctrine. But, I mean, unless you think otherwise, I'm not sure that they necessarily have to be part and parcel of the same analysis. In fact, I don't think they are. I understand, Your Honor. Why don't you tell us why you think the decision should be affirmed under Emeritus? Can you do that? Yes, Your Honor. First and foremost, the cases are parallel to the extent that they involve the same parties and essentially identical issues. And the lower court, in its analysis... They don't involve the same parties. Forrester isn't a party to the state court action. That is correct, Your Honor. But Forrester's have subsequently deposited the funds in the court registry and are no longer... They've been dismissed. Precisely. So they're no longer a party to the federal court action. So the only parties remaining in the federal court action are the Fogles and in the state court action, the Fogles as well. In fact, Kathleen dropped her claim against Forrester's. She did file a claim initially against Forrester's in the federal action, but I think that got dropped. Is that accurate? That's my understanding as well, Your Honor. Yes. So which Colorado factors support the state? You mean Emeritus? I'm asking about Colorado. Your Honor, I would argue that the second element, the second factor in Colorado River, the relative inconvenience of the fora favors a stay. In this circumstance, it would be inconvenient in a Pele's position to be exposed to a judgment in the federal action and have the state court action issue an opinion that's inconsistent with that action. For example, under the MSA and under the claims in the state court action, if a breach of fiduciary duty is done, for example, that could dramatically affect any disbursements of the insurance proceeds and associated damages. Is that the only Colorado River factor? I would argue that the third factor also favors a stay. The order in which the jurisdiction was obtained and relative progress of the two actions, again, referring back to the timing of the filing of the actions. Opposing counsel is correct that the state court action was filed subsequent to the federal action, but the counterclaim in the federal action was filed approximately three months after the state court action and specifically in count one request relief under the Declaratory Judgment Act. Would it be true that the issue in state court whether David is entitled to share the proceeds that Kathleen receives, that that can't be answered unless the district court first determines whether she's entitled to receive the proceeds in the first place? That's correct, Your Honor. There has to be a determination of one issue. Is she entitled to proceeds? And to the extent that David has been damaged, what are those damages? And to the extent that and to what extent does the MSA affect David's entitlement to the insurance proceeds and Kathleen's entitlement to the insurance proceeds? In my mind, the allegations and the cases are very, very tightly intertwined. Moving on to additional factors, factor four and factor five and factor six, I would also argue favor a stay. And I can go through each one of those elements if Your Honor would like. Well, you have five minutes left. I think to the extent that with regard to factor four, there's the intent of factor four to avoid piecemeal litigation. And with regard to the state court action and the federal action, again, these actions are intertwined and it is appropriate to stay the federal action pending the outcome of the state court action. And with regard to factor five, the issue of whether federal law provides the rule of decision. Certainly, the federal court has the authority to do so, to issue an order related to the issuance of proceeds of the insurance policy. But similarly does the state court. And the risk of having two inconsistent judgments warrants a stay, Your Honor. I thought this was going to be determined under state law. Federal court can apply state law, but state law is going to govern. That's correct, Your Honor. That's correct. And I think that emphasizes the importance of a decision from the state court before the federal court renders any decision with regard to the insurance proceeds. Your Honor, I would reserve remaining time for any further questions and rebuttal if the court approves. All right, we have your argument, Mr. Williams, and we'll hear from Mr. Kribosar for rebuttal. Thank you, Your Honor. First, let me go back and address one of Judge Rosenbaum's questions about parallel proceedings. I knew I saw it in there, but I couldn't find it when you asked the question. If you look at page 1331 of the emeritus decision, well, it starts on 1330. It says, guided by these general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state law claims in the face of parallel litigation in the state court. So I knew it was in there. So we do have that same threshold in parallel. But that doesn't say that we necessarily have to inquire into whether there are so-called parallel proceedings. And in fact, just this year, just a few weeks ago, we held a national trust insurance company versus Southern Heating and Cooling, which is case number 20-11292, 2021 Westlaw 4025528 at pages 3 to 4, that in fact, there don't necessarily have to be parallel proceedings. We said that's not required for emeritus. Now, the mandate has an issue, but I don't, you know, to me, it kind of suggests that we don't have to have parallel proceedings. But it all goes back to the underlying public policy of abstention is the exception, and you want to allow cases once the court has jurisdiction to be resolved on the merits. So I could understand why an emeritus this court wrote about doing this analysis for parallel proceedings. I would also like to address some of Mr. Williams' comments about the Colorado River factors. Respectfully, we don't think any of those militate in favor of the stay in this case. But Mr. Williams focused particularly on item number two, which is the relative inconvenience of the forum. And while he spoke about all kinds of issues, this court in Barone said exactly what the inquiry is there. It deals with the physical location. And we cannot overlook the fact that both courts in this case are in South Florida. We're dealing with the Southern District of Florida. We're dealing with the circuit court in Palm Beach County. So certainly the Barone factor cuts against abstention. The third factor. Well, does it cut against or is it just neutral? Can I ask you this? Do you think Colorado River applies here? Or you think it really doesn't apply and we should just apply emeritus? I don't care either way. I just want to know your position in this litigation. My position in this litigation is Colorado River is a threshold matter. That analysis doesn't need to be done because you do not have parallel proceedings as that case is discussed in various cases by this circuit. For the reasons that I stated in my opening statements, we do not have the same issues in both cases. Going back then. So you say Colorado River won't support it because there are no parallel proceedings. Won't support this day. It's not that it doesn't apply at all. It's just if you go to the threshold issue in Colorado River, you can get rid of Colorado River. That's correct. But if you're going to look at it. And that analysis should focus on emeritus. That's where we should focus. Actually, I don't. Respectfully don't agree with that. I think that emeritus. We can go through the factors and I think the analysis. It's fine if you don't agree. I'm just trying to see what you argue. OK. Colorado River doesn't help sustain the district court because they're not parallel proceedings. That takes care of Colorado River. So now tell me what we should do about emeritus. So emeritus applies to declaratory judgment actions. It hasn't been extended to interpleaders. So I'm not sure that given the fact that this case was brought as an interpleader. Emeritus is even relevant. But if you do look at it, I can assure you if I had more time, I'd walk you through the factors and show you why under emeritus. Just as the Colorado River fact. But let me ask you, I mean, with respect to your point that it shouldn't apply because this was brought as an interpleader. I mean, that part of the case is done. The money is in the court. Now we're done. I mean, the only thing that has to be determined is who gets the money. But, you know, as far as the interpleading itself goes. That that part is done. Well, actually, Your Honor, the interpleader cases talk about every interpleader. And this is in our brief is a two part analysis. Step one of an interpleader case is whether the funds get interplayed. And step two of the case, which is necessary to conclude the case, is determined to whom the interplayed race should be distributed. Right. But that's entirely dependent on the outcome of the marital settlement agreement. And so it seems like it's the same issue. Actually, it's not. Again, if you look at the marital settlement agreement and as Judge Hull read from the complaint, the marital settlement agreement says Kathleen gets the proceeds. And then she's responsible for determining how to distribute those among she and her children, even into their adult life. So the interesting issue here is what if by some theory, and I can't imagine what it is, David should prevail on the interpleader action. The state court case becomes moot because he's not suing for his rightful share anymore. So the first step has to be completely interpleader action. The first case filed, the one that was advanced to the eve of trial, and allow the district court to decide where those funds go pursuant to both the designation of beneficiary under the policy and the MSA. But wouldn't the federal court then be deciding whether David gets the funds or whether Kathleen gets the funds based on Florida law in the same exact way? Hopefully, that the state court would be deciding it. I mean, wouldn't both courts be applying the same body of law to make that determination? The answer in terms of who the beneficiary is, is a matter of state law, but that issue is not framed in the pleadings in state court. The issue framed in the pleadings in state court is what is David's rightful share of the dollars that are sitting in the federal court registry. So that's why the interpleader should be completed first. And then we can go back to state court, which, frankly, is at the infancy of its proceedings. You can tell from the record in this case, that case stopped at an amended complaint and a motion to dismiss that amended complaint and a motion to strike attorney's fees. Whereas here, we are on the eve of trial, ready to determine, based on the pleadings of foresters, how this interpleader case gets concluded. So there's no efficiency here, and it's inconsistent with the general public policy of once you have jurisdiction of a case like this, allowing it to go to judgment. And if you have no further questions, I think we've covered it all in our brief. Thank you, Mr. DeGrossar and Mr. Williams. Thank you for your time, Your Honors. Thank you, Your Honor.